UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LONDON

CIVIL ACTION NO. 6:06-118

CHAS COAL, LLC PLAINTIFF

v. **OPINION AND ORDER**

NATIONAL COAL CORPORATION, DEFENDANT
THIRD PARTY PLAINTIFF

v.

CHARLIE COLLINS, THIRD PARTY DEFENDANT

* * * * * * * * *

This matter is before the Court on the Motion to Dismiss filed by the Third Party Defendant Charlie Collins (Rec. No. 13).

**I. FACTS.**

Plaintiff Chas Coal, LLC ("Chas") filed this action against National Coal Corporation ("National") asserting that, pursuant to certain lease agreements, which Chas calls the 1998 Lease Agreement and the Amended and Restated Lease Agreement, Chas has the exclusive right to mine the surface of certain property located in Bell County, Kentucky (the "Property"). (Rec. No. 1, Complaint ¶ 13). Chas asserts that National only had a right to mine by underground mining methods the coal located in a particular coal seam on the Property which it calls Hazard No. 9. (Rec. No. 1, Complaint ¶ 20). Nevertheless, Chas states that several times from June to November 2005, National mined the surface of the Property. (Rec. No. 1, Complaint ¶ 15).

Chas asserts that, by letter dated February 13, 2006, National admitted to Chas that it had removed 47,366.08 tons of coal from the Property. Chas asserts that National offered to pay Chas a "grossly inadequate" amount as compensation. (Rec. No. 1, Complaint ¶ 17). Chas asserts claims

of willful and innocent trespass against National.

National filed an Answer and Third Party Complaint against Charlie Collins ("Collins")(Rec. No. 6). In its Third Party Complaint, National asserts that, pursuant to a certain agreement (the "Collins Agreement") between Collins and National, Collins was responsible during the relevant time period for providing consulting services and advice to National, including advice as to National's right to mine the coal which is the subject of Chas's complaint, and with advising National as to the appropriate method for mining that coal. (Rec. No. 6, Complaint, ¶8). National defines the "relevant time period" as the time period between June and November 2005. (Rec. No. 6, Complaint ¶ 6).

National asserts that Collins advised National that it had the right to mine the coal that is the subject of Chas's complaint and that it had the right to mine the coal by the high wall mining method. National asserts that it relied on this advice in allowing the mining of the coal. National asserts breach of contract and negligent misrepresentation claims against Collins, stating that if it is determined that National committed a trespass, then the trespass was caused by Collin's advice.

Collins then filed this Motion to Dismiss the Third Party Complaint. (Rec. No. 13). National filed a response arguing that the Motion to Dismiss should be denied. In the alternative, National asks the Court to convert Collins' Motion to Dismiss, which relies on matters outside the pleadings, to a motion for summary judgment and to allow National an opportunity to take discovery on the issues raised by Collins' Motion to Dismiss.

## II. ANALYSIS.

### A. Breach of Contract Claim.

In its Third Party Complaint, National asserts that Collins breached an "agreement with

National" pursuant to which, Collins "was responsible during the relevant time period for providing consulting services and advice to National regarding certain coal owned or controlled by National." With his Motion to Dismiss, Collins asserts that he never entered into any agreement with National. Instead, he states that National entered into an agreement with Calvary Coal Company, Inc. ("Calvary") and that Collins is the president of Calvary.

With his Motion to Dismiss, Collins submits a copy of an agreement between Calvary and National dated November 24, 2004 (the "Calvary Agreement"). In the Agreement, Calvary agrees to "render services in connection with the extraction and mining of coal by the underground mining method from Hazard Number 8 seam of coal. . . ." (Rec. No. 13, Ex. A). More specifically, Calvary "agrees and undertakes to render the following services: to mine, remove, excavate, extract, transport, prepare, stockpile and load for [National] the quantities and quality of coal specified" in the Calvary Agreement. The term of the Calvary Agreement is one year with automatic renewal until it is terminated. The agreement was signed by Collins as president of Calvary.

Collins also attaches his affidavit in which he states that Calvary performed services under the Calvary Agreement through August 2005 "at which time Calvary ceased operating." He further asserts that, from November 24, 2004, the date of the Calvary Agreement, until August 2005 "and also the present date," Collins served as Calvary's president. Collins also states that he became an employee of National in or about September 2005. Collins asserts that he never entered into an agreement in his individual capacity to provide consulting services to National.

In its response to the Motion to Dismiss (Rec. No. 15), National argues that, based upon the evidence in the record at this point, a reasonable jury could conclude that the Collins Agreement existed. National argues that a reasonable jury could reach this conclusion because Collins admits

he was employed by National and does not deny that he advised National on mining rights. National also argues that the fact that there was a Calvary Agreement does not prove that there was no Collins Agreement. Furthermore, National argues, the Calvary Agreement ceased in August 2005. Thus, argues National, the Collins Agreement could have covered the remaining part of the "relevant time period," which would be the time period from August 2005 to November 2005.

It is true that the fact that the Calvary Agreement exists does not necessarily prove that there was no Collins Agreement. Nevertheless, Collins' affidavit is certainly evidence that the Collins Agreement did not exist. In response, National provides absolutely no evidence of the Collins Agreement. Instead, it only posits that the Collins Agreement *could* still exist despite the evidence that Collins submits to the contrary. The Court does not agree that Collins' employment with National beginning in September 2005 standing alone provides any evidence of a Collins Agreement covering the relevant time period of June to November 2005.

Thus, if the Court can consider the evidence submitted by Collins in his Motion to Dismiss, then the Court must find that there is no agreement between the parties. As a general rule, however, matters outside the pleadings may not be considered by a district court when ruling on a 12(b)(6) motion to dismiss, without converting the motion into one for summary judgment. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); Fed. R. Civ. P. 12(b). If a motion to dismiss is converted to a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

Nevertheless, on a motion to dismiss, "a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir.

1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id*. at 89 (citing *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993). Accordingly, the Sixth Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id*. In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Greenburg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999)(quoting Moore's Federal Practice § 56.30[4](3rd ed. 1998). Furthermore, if affidavits do nothing more than verify the complaint or reiterate the contents of the complaint itself, they are not truly materials outside the pleading. *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

Collins' affidavit, however, flatly contradicts the allegation made in National's complaint that there was a Collins Agreement. Accordingly, if the Court considers the affidavit, it must convert Collins' Motion to Dismiss, as it pertains to the breach of contract claim, to a motion for summary judgment and give National a reasonable opportunity to present legal and factual material in opposition. The Court would follow this procedure if the breach of contract claim were the only claim that National had asserted against Collins. A copy of the Collins Agreement or a simple affidavit from a National representative stating that there was indeed a Collins Agreement would be sufficient evidence to raise an issue of fact as to the existence of the agreement. The Court could order National to produce such evidence in a certain number of days. This would save Collins from having to participate in lengthy discovery if, in fact, no agreement exists.

As will be explained further below, however, and as Collins concedes in his Reply brief, the Court cannot at this time grant Collins' Motion to Dismiss National's negligent misrepresentation claim. Thus, Collins will remain a party to this case and must participate in discovery in any event. For this reason, instead of converting Collins' Motion to Dismiss to a Motion for Summary Judgment, the Court will deny Collins' Motion to Dismiss because it necessarily relies on extrinsic evidence. The Court, however, will grant Collins leave to re-raise the arguments made in this Motion to Dismiss after the parties have engaged in some discovery.

**B. Negligent Misrepresentation Claim.**

As to National's negligent misrepresentation claim, citing to *Summit Petroleum Corp. of Indiana. v. Ingersoll-Rand Financial Corp.*, 909 F.2d 862 (6th Cir. 1990), in his Motion to Dismiss, Collins argued that he is insulated from liability for acts done within the scope of his agency on behalf of a disclosed principal. In its response, National relied on *Smith v. Isaacs*, 777 S.W.2d 912 (Ky. 1989) and argued that "an officer of a corporation is personally liable for his own tort, even if the tort is committed on behalf of the corporation." National noted that in the *Summit* case, the Sixth Circuit relied on two Kentucky cases decided prior to *Isaacs*. In his Reply brief, Collins concedes that "if he is not protected from a negligence claim under the holding of *Summit Petroleum* then the case is not ripe for summary judgment *on that issue* in advance of discovery." He further states that, in view of *Isaacs*, the Court should treat his Motion to Dismiss as a Motion for Partial Summary Judgment on only the breach of contract claim.

In *Isaacs*, the Kentucky Supreme Court stated that "the issue is whether [an individual's] position as an officer or shareholder in [a] corporation immunizes him from tort liability in circumstances where he would be otherwise liable if he were not a shareholder. It should be obvious

that it does not." *Id*. at 914. The court further stated that "the agent of a corporation, albeit a principal shareholder and officer of the corporation, is personally liable for a tort committed by him although he was acting for the corporation." *Id*. (quotations and citation omitted). Because in his Motion to Dismiss the negligent misrepresentation claim, Collins relied solely on the argument that he is insulated from liability for acts done within the scope of his agency on behalf of Calvary, the Motion to Dismiss the claim will be DENIED.

**III. CONCLUSION.**

For all the above reasons, the Court hereby ORDERS that Collins' Motion to Dismiss Third Party Complaint (Rec. No. 13) is DENIED.

Dated this 16th day of January, 2007.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**
***Karen K. Caldwell*** KKC
**United States District Judge**